IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christine Novak | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 2448 |
| | ) |
| Monarch Recovery Management, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

In this action, plaintiff asserts that defendant violated the Fair Debt Collection Practices Act ("FDCPA") by sending her a dunning letter after she had filed for Chapter 13 bankruptcy. Before me are cross-motions for summary judgment. For the reasons that follow, defendant's motion is granted and plaintiff's motion is denied.

I.

The facts giving rise to the alleged violation are undisputed except where noted. In or around January of 2013, plaintiff opened a credit card with Credit One Bank and incurred a consumer debt. MSW Capital, LLC later acquired that debt. In early August of 2014, MSW placed the account with defendant, Monarch Recovery Management, Inc., for collection. Shortly thereafter, Monarch

1

submitted the account to the credit reporting agency Experian for a "bankruptcy scrub," which was completed on August 12, 2014.

Monarch sent plaintiff collection letters on August 13, 2014, and October 8, 2014, and it also attempted to reach plaintiff by phone but was unsuccessful. Then, on November 20, 2014, plaintiff filed a Chapter 13 voluntary petition for bankruptcy. Neither Monarch nor MSW was included on the bankruptcy service list, nor did either receive notice of the creditors meeting in plaintiff's bankruptcy case.[1]

Monarch sent plaintiff a third collection letter on January 5, 2015. As of that date, Monarch had not received notice of petitioner's bankruptcy petition.[2] On January 12, 2015, Monarch

---

[1] Plaintiff does not dispute these facts but asserts in her L.R. 56.1(b) response that the facts are "immaterial." As courts in this district have observed on multiple occasions, L.R. 56.1 statements are not the appropriate platform for raising legal arguments. *See, e.g., Grabianski v. Bally Total Fitness Holding Corp.*, 169 F. Suppp. 3d 785, 788 (N.D. Ill. 2015) ("L.R. 56.1 submissions are not the proper venue for presenting legal arguments or for developing whatever 'spin' the parties wish to place on the facts."); *Portis v. City of Chicago*, 510 F. Supp. 2d 461, 464 (N.D. Ill. 2007) ("[w]hether the fact asserted is material...is argument to be presented in defendant's brief, but not in the L.R. 56.1(b) response, where the only question is whether the fact asserted is contested.").

[2] Monarch supports this assertion with the testimony of its president, Diane Mazzacano. Plaintiff points to no evidence to controvert Mazzacano's testimony but purports to dispute the assertion with the argument that "if the procedures that Monarch identified in discovery and during the deposition worked, Monarch would have received notice of Plaintiff's bankruptcy before sending the January 5, 2015 letter." Pl.'s L.R. 56.1(b) Stmt. at ¶ 28. This response is inappropriate under L.R. 56.1 for reasons explained above. Becuase plaintiff identifies no evidence

closed plaintiff's collection account at MSW's direction. Defendant received notice of plaintiff's bankruptcy for the first time in a letter from plaintiff's counsel dated January 26, 2015.

This lawsuit followed.

I.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I must construe all facts in favor of the nonmoving party, and may grant summary judgment only "if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Turner v. J.V.D.B. & Associates,* 330 F.3d 991, 995 (7th Cir. 2003)

Plaintiff's four-count complaint alleges violations of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692c(a)(2) of the FDCPA. Section 1692(e), which plaintiff asserts in Counts I and II, makes it unlawful for debt collectors to use false representations or means in connection with the collection of a debt. "A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. §

---

suggesting that Monarch did, in fact, have notice of her bankruptcy before it sent the January 5, 2015, letter, defendant's asserted fact is deemed admitted.

362) or the discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). This section creates a strict liability rule, meaning that there is no scienter requirement. ("Debt collectors may not make false claims, period."). *Id*. at 730. Nevertheless, a debt collector who violates § 1692e, or any other substantive portion of the FDCPA, can escape liability if it establishes "by a preponderance of the evidence that (1) the violation was unintentional, resulting from a 'bona fide error,' and (2) that error occurred not-withstanding the maintenance of procedures reasonably adapted to avoid any such error." *Turner,* 330 F.3d at 995-96 (7th Cir. 2003) (internal quotation marks and citation omitted); 15 U.S.C. § 1692k(c).[3]

The central issue in the parties' cross-motions is whether the undisputed facts establish Monarch's bona fide error defense. For the purposes of examining this issue, I assume that Monarch's conduct violates the asserted provisions of the FDCPA.

As noted above, the first prong of the bona fide error defense asks whether defendant's violation of the FDCPA was unintentional. Plaintiff does not dispute that Monarch had no

---

[3] In some cases, the Seventh Circuit has further broken down the two prongs articulated in *Turner* into three prongs, severing the question of the defendant's intent from the question of whether the violation resulted from a bona fide error. *See, e.g., Kort v. Diversified Collection Services, Inc*., 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)). Nothing in the parties' submissions in this case, however, suggests that the outcome of their motions would be different under a three-prong analysis.

knowledge of plaintiff's bankruptcy prior to sending the January 5, 2015, letter, and she articulates no theory under which Monarch's presumed violation of § 1692e can be deemed intentional under those circumstances. *Cf. Turner*, 330 F.3d at 996 ("proof that [the debt collector] was unaware of the bankruptcy would be a logical first step" to establishing that its violation was unintentional). Indeed, plaintiff's response to Monarch's bona fide error defense focuses exclusively on the second prong: whether the procedures Monarch had in place to avoid sending collection letters to consumers in bankruptcy were reasonably adapted to avoiding the error that led to the violation.

Monarch's President, Diane Mazzacano, testified in an affidavit and at her subsequent deposition about Monarch's procedures for ensuring compliance with the FDCPA's ban on collecting from consumers involved in a bankruptcy. In her affidavit, Mazzacano explains that generally, "it is not advantageous" for debt owners to place accounts that are in bankruptcy with debt collectors, and that "as a result, the practice for all clients, including MSW, is not to place accounts with Monarch for collection where the consumer has filed bankruptcy." Mazzacano Aff. at ¶ 4, Exh. 1 to Def.'s L.R. 56.1 Stmt. Mazzacano also testified that as part of its regular business practices, Monarch runs all new accounts through an outside bankruptcy "scrub" service, where the new placements are

5

checked for bankruptcy, before it begins any collection activity. *Id*. at ¶ 5; Mazzacano Dep. at 17:15-18, Exh. 2 to Def.'s L.R. 56.1 Stmt. In addition, Monarch employees "are trained, and there is a procedure in place, when a consumer indicates that she has filed bankruptcy, for the collector to notate the account, and the account is closed to the collection floor." Mazzacano Aff. at ¶ 8. Mazzacano also testified that Monarch's collectors are monitored and supervised daily by assistant managers, managers, the vice president of collections, the quality assurance department, and the compliance department to ensure compliance with the FDCPA. Mazzacano Dep. at 9:8-10:9.

In addition to Mazzacano's testimony, Monarch produced two versions of its written bankruptcy policy. Both documents outline the three general ways in which Monarch may become aware of a bankruptcy—through a verbal notification from the consumer, a written notification from any source, or a "scrub" notification from Experian—and define the specific steps collectors are to take in each instance. *See* Exh. F to Pl.'s L.R. 56.1 Stmt. (DN 30-2). Plaintiff's argument that Monarch's procedures are not reasonably adapted to avoid violating the FDCPA's ban on collecting from bankrupt consumers homes in on one specific difference in the two versions' descriptions of the "scrub notification" procedures, which are described below.

In the policy Monarch originally produced, the "Scrub Notification" section states that all new accounts are sent to Experian within 24 hours of placement. It goes on to describe the following specific steps:

- Monarch uploads a file containing new accounts to Experian "for processing through Experian's First Sweep product";
- Experian processes the accounts and returns positive bankruptcy "hits" to Monarch via a file download;
- Monarch processes the "hit file and all hits are closed systemically according to client specifications";
- "Experian continually monitors all accounts to identify Bankrupt accounts for a period of 6 months and hits are returned in the same manner as described above."

*Id*. at MRM00010 (DN 30-2).

At her deposition, Mazzacano testified that she was uncertain whether this policy was in place at the time Monarch sent plaintiff the January 5, 2015, letter. Later, in a supplemental discovery response, Monarch produced a different version of its written bankruptcy policy, stating that that policy, not the earlier one, was in fact the one in effect at the relevant time. *See* Exh. F. to Pl.'s L.R. 56.1 Stmt.

The later produced policy contains a section captioned "Experian Notification," which states that all new accounts are sent to Experian within 24 hours of placement. It goes on to describe the following steps:

- "Positive bankruptcy hits are returned to Monarch via file download";
- "Monarch processes the hit file and all hits are closed systemically according to client specifications."

*Id.*

Plaintiff makes much of the fact that Monarch's supplemental discovery response, which includes the version that does not reference Experian's ongoing monitoring for a six-month period, was late and lacked appropriate certifications. Although plaintiff does not clearly explain how this objection bears on her theory of liability, it seems she believes that if Monarch is held to the policy it initially produced, it cannot prevail on its bona fide error defense. She reasons: "If Defendant's procedures were actually effective, it would have known about Plaintiff's bankruptcy before sending the January 15 (sic) letter that violated the FDCPA." Pl.'s Opp. at 4. In other words, she points to the fact that she received the letter as proof that Monarch's procedures were unreasonable. If this reasoning were correct, however, the bona fide error defense could never prevail. Indeed, the defense assumes that a violation occurred notwithstanding the procedures the debt collector had in place to avoid such violations; if all that were necessary to refute the defense were to show that a violation did in fact occur, the defense would be meaningless.

Moreover, plaintiff does not meaningfully dispute that if Monarch's policy was indeed the one it disclosed in its supplemental discovery, that policy satisfies—and, indeed, goes well beyond—the criteria the Seventh Circuit concluded in *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004), were reasonably adapted to avoid dunning a creditor in bankruptcy. In *Hyman*, the debt collector presented evidence that it relied on its client not to forward bankrupt accounts, and that it immediately ceased collection efforts once it learned of a bankruptcy filing. *Id*. at 967. Here, the undisputed evidence shows that Monarch's bankruptcy policy included both of these elements, as well as employee training on compliance with the FDCPA; employee monitoring and supervision to ensure compliance in practice; and a procedure for forwarding all new accounts to Experian to be checked for possible bankruptcies.[4]

Plaintiff assails these procedures as "inherently flawed," arguing that "Experian does not actively search for bankruptcy filings, it only reports the information provided to it by others" (an assertion for which she cites no factual support), and that Monarch should have asked all three of the well-known credit reporting agencies—not just Experian—to scrub new accounts. But

---

[4] I am mindful that in *Hyman*, the court concluded after a trial, rather than at summary judgment, that the defendant had established the bona fide error defense. But this distinction does not alter my analysis here because plaintiff has not raised a material factual dispute regarding Monarch's policies.

the court made clear in *Hyman* that debt collectors need not take every possible precaution to avoid making an error that results in a violation, as "§ 1692k(c) only requires collectors to adopt reasonable procedures." *Id*. at 968 (upholding the defendant's bona fide error defense even though it "could have done more to assure that bankruptcy proceedings had not been initiated"). In any event, there is no dispute that the reason Experian's bankruptcy scrub on plaintiff's account did not return a positive "hit" is that plaintiff filed for bankruptcy several months *after* the scrub was performed. Whether Monarch had requested a scrub from one agency or three would not have altered this outcome. None of plaintiff's cited authorities is to the contrary, and none supports her entitlement to a trial on the facts here.

Accordingly, I conclude that Monarch has established the bona fide error defense as a matter of law. In the interest of completion, however, I briefly address Monarch's additional arguments that it is entitled to summary judgment on Counts III and IV of the complaint independently of that defense. Because it is undisputed that Monarch ceased collection efforts even before it learned of plaintiff's bankruptcy, her § 1692f claim alleging unconscionable collection means fails as a matter of law under *Turner* and *Randolph*. *See Randolph*, 368 F.3d at 733. Moreover, there is no evidence (nor even does plaintiff contend) that Monarch knew she was represented by counsel at the time it sent

the January 5, 2015, letter, knocking out her § 1692(c)(a)(2) claim as well. *Id.* at 730 ("§ 1692c(a)(2)...makes liability depend on the actor's knowledge."); *Dore v. Five Lakes Agency, Inc.*, No. 14 C 6515, 2015 WL 4113203, at *3 (N.D. Ill. July 8, 2015) (Shah, J.) ("Section 1692c(a)(2) applies only if the debt collector *actually* knows that the consumer is represented.") (original emphasis). Moreover, defendant's arguments stand unrebutted, as plaintiff tacitly concedes that Monarch is entitled to judgment on her § 1692f claim, *see* Pl.'s Resp. at 3, and she offers no response at all to defendant's argument that it is entitled to judgment on her § 1692(c)(a)(2) claim. Accordingly, I conclude that Monarch is entitled to summary judgment on Counts III and IV of plaintiff's complaint regardless of its ability to establish the bona fide error defense.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 13, 2016